WHITE, J.,
delivered the opinion of the Court:
The Indictment in this Case charged the accused with feloniously selling a free mulatto man for a slave, contrary to the form of the Statute in that case made and provided. It was framed on the 28th section of the Act of 1792, concerning slaves, free negroes and mulattoes. The section is in the following words : “If any person shall hereafter be guilty of stealing, or selling a free person for a slave, knowing the person so sold to be free, and thereof shall be lawfully convicted, the person so convicted shall suffer death, without benefit of clergy.” (He then stated the evidence as above.)
On behalf of the Commonwealth, it is said that the words of the Statute are clear, distinct and imperative, and without any exception : that no Court has power to take a Case *out of the clear, operative *179 words of a Statute, because it may think, that on account of the severity of the haw, such case ought to form an exception ; that by the express words of the Statute, every person who does, under any circumstances whatever, sell a free person for a slave, knowing him to be free, is doomed to death ; and, that the Court was bound to obey the mandates of the haw, by pronouncing that sentence which is now commuted for it: that it was the duty of the Legislature to protect purchasers from such frauds as these, as well as to protect free negroes from being made slaves, and for aught the Court can discern, the one was as much in the contemplation of the Legislature as the other: that the Court ought not, to get at the true intention of the Legislature, to look into the preamble of the Statute of 1787-8, ch. 37, by which the principle was first introduced into our Criminal Code, because the Legislature in 1792 dropped it, which, it was alleged, shewed that other motives besides those expressed in that preamble, operated on its mind.
There is some diversity of opinion among the Judges, upon this subject, but a majority of the Court is of opinion, that when a new principle is introduced by Statute into the existing Code of Laws, and a Court is called on to carry that principle into operation in a particular Case, and a doubt does arise whether that Case be within the proviso of the Statute, it is proper for the Court to look into the history of the Law, to see how the Law stood before the new principle was introduced ; what was the evil under the old Law intended to be redressed, and to apply the remedy provided, towards the suppression of that evil, taking care at the same time, not to extend the remedy beyond the real intention of the Legislature, to evils not contemplated by it at the passage of the Statute; lest by so doing it should violate the Legislative will, exercise powers not delegated to it, and introduce greater evils than those intended to be remedied : that in Criminal Cases, where a reasonable doubt arises upon the construction of a Statute, the decision ought to be in favor of the accused : that although the Penitentiary Laws have mitigated the punishment of this offence, yet the Statute ought now to receive such construction as it would have received at the time of its passage : that the application of the punishment of death to the offence described in the Indictment, was a new principle introduced into our Laws, not by the Statute of 1792, but by the Statute *of 1787-8, and therefore the preamble of that Statute ought to be looked into by the Court. That preamble is in the following words: “Whereas several evil disposed persons have seduced or stolen the children of black and mulatto free persons, and have actually disposed of the persons so seduced or stolen, as slaves, and a punishment adequate to such crimes not being by Law provided for such offenders, Be it therefore enacted.” <&c. This preamble, when looked into, shews clearly what was conte'mplated by the Legislature, and what was its intention ; to wit: that before the passage of that Statute, several persons had seduced or stolen negro and mulatto children who were free, and sold them for slaves : that the evil under the old Law was, that for this enormous offence, no adequate remedy was provided, it being at that time punishable only as a mis-demesnor; and, that taken in conjunction with the enacting clause, it shews that the intention of the Legislature was t'o protect the rights of all free blacks and mulattoes from such abominable outrages, by applying to such offences the highest sanction known to our Laws, the punishment of death. Here was indeed an evil to be repressed, worthy of that awful sanction, and one which justified its application by the Legislature. But, putting out of view the preamble, what is to be found in the clause itself as incorporated into the Code of 1792, which can countenance the opinion that the Legislature had at all in its mind such a fraud as that proved upon the trial of this Case, or had even heard of such an one ? The object of the Legislature, unquestionably, must have been to protect the rights of the free blacks and mulattoes ; to protect that liberty which the Laws had extended to them, and which from their weakness might be easily wrested from them by the arts, or violence of unprincipled men. The object could not have been to protect purchasers of negroes from being cheated by a collusive combination between a free white and a free black man. The awful disparity between that offence, and the punishment of death, forbids a belief that the Legislature could have intended thus to punish such an offence, an offence not likely to happen often, and not appearing to be then known to have happened. They would not so have punished that offence, when it has left other, frauds of greater enormity, and more frequent occurrence, to the correction of milder punishments. Nor is it to be believed that, if the Legislature had been as contended *for on behalf of the Commonwealth, whilst punishing with death one of the parties to the fraud, it would have left the other, equally guilty, (the free negro,) go entirely unpunished.
The Court is further of opinion, tha.t the omission of the preamble in the Act of 1792, is of no kind of consequence, it being well known that that Statute, like many others passed at the same session, was a mere compilation of various former Statutes, upon like subjects, and that to have inserted into that compilation all the preambles of the various Statutes thus compiled, would most unnecessarily have swelled the work to an,enormous siae. For this, and probably this reason only, was this preamble and others, dropped in most, if not all, of the Statutes, then revived.
The judgment of the Court therefore is, that the judgment in this Case be reversed, (the Attorney General having previously consented to receive the copy of the record which accompanied the petition as if duly certified upon the return of a Certiorari,) and the Court *180 proceeded to give such judgment as the said Superior Court of Norfolk ought to have given, it is further considered that a new trial be granted to the petitioner.